# EXHIBIT 1

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esquire (031981997)**
**5 Greentree Centre**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**
**Attorneys for Plaintiff**

| | |
|---|---|
| BRENDA TRIPICCHIO, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>OLD NAVY, LLC; OLD NAVY (APPAREL), LLC; OLD NAVY HOLDINGS, LLC; GPS SERVICES, INC.; THE GAP, INC.; and DOES 1-20,<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAMDEN COUNTY<br><br>DOCKET NO.:<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF & JURY TRIAL DEMAND** |

Plaintiff Brenda Tripicchio, individually and on behalf of all other similarly situated New Jersey consumers, through her undersigned attorneys, files this class action complaint seeking declaratory and injunctive relief only in New Jersey against Defendants, and alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this proposed class action for injunctive relief only against Defendants, under the New Jersey Declaratory Judgment Act and New Jersey Consumer Fraud Act, alleging violations of federal and New Jersey state pricing regulations.

2.     Specifically, it is alleged that Defendants engaged in a uniform policy of advertising and displaying fictitious purported former prices, as well as false "sale" prices and percentage-off discounts, in the advertising, marketing, and sale of apparel and other personal items offered for sale in their physical Old Navy and Old Navy Outlet stores in New Jersey.

1

3.      This uniform scheme, which is set forth in more detail herein, may be summarized as follows.

4.      Defendants have a uniform policy of creating and listing an arbitrary "fake" base price, which purports to be an item's former, original, and/or regular price at which the item is customarily sold, for every item offered for sale in their physical Old Navy and Old Navy Outlet stores in New Jersey (hereafter "fake base price").  <u>See</u> Exhibit A, Photographs of Old Navy and Old Navy Outlet store price tags, listing, <u>e.g.</u>, the base price of jean shorts as **"$19.99"** and the base price of a girl's top as **"$16.99."**

5.      These fake base prices are created by Defendants, using a standardized formula and uniform set of criteria created and implemented by Defendants.  Meanwhile, Defendants' physical Old Navy and Old Navy Outlet stores are the exclusive sellers of the large majority – if not all – of the items they offer, as Defendants' "Old Navy" branded items are typically designed and manufactured by Defendants or their agents exclusively for sale in Defendants' Old Navy and Old Navy Outlet stores.

6.      The fake base prices are much higher than the prices at which the items in question are normally and customarily sold or offered for sale by Defendants.  Defendants use the fake base prices to create the misleading impression in the minds of consumers that the prices of the items in their stores have a high actual value but are on "sale" at "discounted" prices when Defendants offer to sell the items at a price lower than the fake base price.  <u>See</u> Exhibit B, Photographs of various in-store Old Navy and Old Navy Outlet signs, advertising **"SALE NOW"** and **"OUTLET EXCLUSIVE *deal!* NOW"** discounts and selling prices for numerous racks of items, <u>e.g.</u>, **"SALE NOW 50% OFF"**, **"SALE NOW $10"**, and **"OUTLET EXCLUSIVE *deal!* NOW 50% OFF"** as compared to the fake base prices listed on the items' price tags.  In actuality, the lower,

purportedly-discounted "sale" prices are the prices at or near which Defendants consistently and regularly sell the items in question.

7.      In fact, the overwhelming majority of the items in Defendants' physical Old Navy and Old Navy Outlet stores are never actually sold or offered for sale at the listed higher fake base price for any significant length of time.   See Exhibit B, Photographs of sale and discount advertisements on nearly every sales rack.  Indeed, Defendants' Old Navy Outlet store consistently offers every single item in the store for sale at a discounted price.  See Exhibit C, Photographs of Old Navy Outlet signs stating **"OUTLET EXCLUSIVE save UP TO 50% OFF STOREWIDE."**

8.      In some rare instances in Defendants' physical Old Navy stores, certain items may be offered for sale at their purported base prices, but only for a very short period of time – usually seven days or less, out of a three-month or greater timespan during which the items are offered for sale.

9.      For example, one of the items purchased by Plaintiff in Defendants' physical Old Navy Outlet store was a Zip-Front Hoodie for Boys.  The hoodie had a base price of **"$19.99"** listed on the price tag, and Plaintiff purchased the hoodie at a purported "sale" price of $15.99, which Defendants specifically advertised to be **"NOW 20% OFF."**  Yet Defendants rarely if ever sold the hoodie or offered it for sale at the fake base price of **"$19.99,"** but rather consistently sold the hoodie, and offered it for sale, at a price that was equal to or lower than the price Plaintiff paid, based on counsel's investigation.   See Exhibit D, Photograph of hoodie purchased by Plaintiff, with attached price tag; Exhibit E, Receipt reflecting Plaintiff's purchase.

10.      Despite this, Defendants consistently advertised an inflated fake base price, listing that fake price on each item's price tag in their physical Old Navy and Old Navy Outlet stores, in

order to create the false impression in the minds of consumers that the fake base price, e.g., $19.99, represented the actual value of the item and was the usual price at which Defendants regularly and ordinarily sold it.

11.    Defendants also perpetually advertise items as being discounted or on **"SALE"** via prominent signs, banners, and notices in their physical Old Navy and Old Navy Outlet stores.  For example, Defendants routinely advertise entire categories of clothing as being on **"SALE"** at prices lower than their listed base prices, or as being discounted by a specified percentage **"OFF"** the listed base prices.  See, e.g., Exhibit B, Photographs of various in-store Old Navy and Old Navy Outlet signs, advertising **"20% OFF"** to **"50% OFF"** discounts and lower **"SALE"** prices for entire categories of items, representing that numerous racks of items are on **"SALE NOW"** and **"OUTLET EXCLUSIVE _deal!_ NOW,"** and quantifying such sales and discounts in terms of a specific **"% OFF"** or lower sale price, e.g., **"SALE NOW 50% OFF"**, "**SALE NOW $10**", and **"OUTLET EXCLUSIVE _deal!_ NOW 50% OFF,"** as compared to the fake base prices listed on the items' price tags.  This practice is deceptive and misleading because the advertised **"SALE"** prices and percentage-off discounts claimed on such signs and notices do not represent an actual sale or discount provided to the consumer. Rather, the purported **"SALE"** prices and discounts listed on such signs and notices merely represent the difference between the higher fake base prices created by Defendants and the lower, purportedly-discounted "sale" prices at or near which Defendants regularly sell the items in the normal course of business.

12.    Defendants bolster the above-referenced scheme by presenting customers at their physical Old Navy and Old Navy Outlet stores with a printed receipt which re-states the fake base price and purported sale price and/or percentage-off discount displayed on the signs referenced above, and specifically identifies the amount of money the customer purportedly **"Saved."**  See

Exhibit E, Plaintiff's Old Navy store receipt, asserting, e.g., an **"Item Discount"** of **"20.0%"** off a long-sleeve hooded fleece with a tagged fake base price of **"$19.99,"** resulting in a purported sale price of **"$15.99"** and a claimed **"Discount"** of **"-4.00"** – the difference between the listed fake base price and the purported sale price of the item, and additionally informing Plaintiff that **"You Saved 147.32"** – the difference between the fake base prices and actual sale prices for all items that Plaintiff purchased.

13.     The statements on Defendants' written receipts are false and misleading.  The amount of the purported **"Discount"** and **"Sav[ings]"** listed on such receipts is simply the difference between the higher fake base prices created by Defendants and the lower, purportedly-discounted "sale" prices at or near which the items are regularly and consistently sold by Defendants in the ordinary course of business.  Thus, the purported **"Discount"** and **"Sav[ings]"** claimed on such receipts are entirely illusory. Customers are not actually saving the amounts claimed by Defendants.  Instead, they are simply buying an item at the same price – or approximately the same price – at which Defendants regularly and consistently sell the item in question.

14.     The deceptive practice and policy alleged herein is not limited to any single item or group of items.  Rather, Defendants' deceptive advertising, marketing, and sales practices regarding listing fake "regular" prices and purported "sales" or "discounts" was, and continues to be, systematic and pervasive at their physical Old Navy and Old Navy Outlet stores in New Jersey for virtually every product for which a lower purported discount price and higher purported regular price were advertised by Defendants.

15.     Federal regulations, as well as the consumer protection laws of New Jersey, prohibit the advertising of fake former prices, "phantom" price reductions, and deceptive claims

5

of percentage-off discounts that are based on inflated, fictitious "regular" prices. <u>See</u>, <u>e.g.</u>, 16 C.F.R. § 233.1; N.J.A.C. § 13:45A-9.6.

16.     By advertising these fake former prices and purported sales and percentage-off discounts, Defendants have violated New Jersey consumer protection laws as alleged herein.

## PARTIES

17.     Plaintiff Brenda Tripicchio is a citizen of New Jersey, residing in Moorestown, Burlington County.  During the class period, Plaintiff purchased goods from Defendants' physical Old Navy store # 3745, located at 100 Premium Outlets Drive, Blackwood, NJ 08012, among others, where she was subjected to the uniform practices alleged herein, and suffered an ascertainable loss as a result of Defendants' unlawful conduct alleged herein.

18.     Defendant Old Navy, LLC is a for-profit Delaware limited liability company with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of Delaware and California.  Defendant Old Navy, LLC is wholly-owned subsidiary of Defendant The Gap, Inc.

19.     Defendant Old Navy (Apparel), LLC is a for-profit California limited liability company with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.  Defendant Old Navy (Apparel), LLC is wholly-owned subsidiary of Defendant GPS Services, Inc.

20.     Defendant Old Navy Holdings, LLC is a for-profit California limited liability company with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

21.     Defendant GPS Services, Inc. is a for-profit California corporation with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a

citizen of California.  Defendant GPS Services, Inc. is wholly-owned subsidiary of Defendant The Gap, Inc.

22.     Defendant The Gap, Inc. is a for-profit California corporation with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

23.     At all times during the relevant class period, Defendants together owned and operated, and continue to own and operate, approximately 1,100 physical Old Navy and Old Navy Outlet stores throughout the United States, including approximately 37 Old Navy and Old Navy Outlet stores in New Jersey.   Defendants also own and/or operate a retail website http://oldnavy.gap.com, by which Defendants advertise and sell their goods, with said website being regularly seen and used by consumers throughout the United States, including New Jersey, to purchase goods from Old Navy.

24.     Defendants Doe 1 through Doe 20, inclusive, aided and/or abetted Defendants Old Navy, LLC; Old Navy (Apparel), LLC; Old Navy Holdings, LLC; GPS Services, Inc.; and/or The Gap, Inc., in such a manner that Doe 1 through Doe 20, inclusive, are each directly, contributorily, vicariously, derivatively and/or otherwise liable for the acts or omissions of Defendants pled herein.  Plaintiff is currently unaware of the true identities of Does 1 through Doe 20, inclusive; upon learning the true identities of Does 1 through Doe 20, inclusive, Plaintiff anticipates either freely amending her complaint or requesting leave from the Court to amend her complaint.

25.     All uniform policies alleged herein exist at all physical Old Navy and Old Navy Outlet stores in New Jersey.  Because these policies are in force at all Old Navy and Old Navy Outlet stores in New Jersey, it is clear that these uniform policies originated with, emanated from,

and were endorsed and ratified by, the corporations which own and manage all of the Old Navy stores: Defendants Old Navy, LLC and The Gap, Inc.

26.     Defendants jointly operate their physical Old Navy and Old Navy Outlet stores out of their headquarters in San Francisco, California, which operation entails, inter alia, the creation and implementation of the advertising, marketing, and sales policies described herein, including the sale of items.

27.     Defendants jointly created and implemented the policies and procedures described herein and, at all times during the relevant class period, jointly participated in, endorsed, implemented, and performed the conduct alleged herein.

## JURISDICTION AND VENUE

28.     Jurisdiction over this matter in New Jersey Superior Court is proper in that all claims alleged in this matter arise exclusively under New Jersey state law.

29.     This matter is properly venued in Camden County, in that Plaintiff purchased the items at issue herein from the Old Navy store owned and operated by Defendants in Blackwood, Camden County.

30.     This action does not raise any federal claims, and the total amount in controversy in this matter – i.e., the cost of implementing the requested injunctive relief in New Jersey and any attorneys' fees and costs that may be awarded – is far less than $5 million.

31.     This Court has in personam jurisdiction over the Defendants because, inter alia, Defendants: (a) own and operate at least thirty seven (37) Old Navy and Old Navy Outlet retail stores in the State of New Jersey; (b) own and operate the Old Navy retail website in the State of New Jersey; (c) regularly transacted, and continue to transact, business in this state; (d) maintained continuous and systematic contacts in this state prior to and during the class period;

and (e) purposefully availed themselves of the benefits of doing business in this state. Accordingly, the Defendants maintain minimum contacts with this state which are more than sufficient to subject them to service of process and to comply with due process of law.

### THE UNIFORM POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

32.     One of the most effective techniques in advertising is for a seller to offer customers a reduction from the seller's own former price for an item.

33.     This technique is widely used because sellers know the truth of the old adage "everyone loves a bargain" and understand that a product's "regular" price – the price at which a product is generally sold in the marketplace – matters to consumers.

34.     Indeed, numerous studies show that a consumer is much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have previously sold the product; where they are being told that an item is worth much more than what they are currently being asked to pay for it.

35.     For example, a well-respected study by Dhruv Grewal & Larry D. Compeau, "Comparative Price Advertising: Informative or Deceptive?", 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that **"[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."**

36.     Numerous other articles and studies have reached the same conclusion. See Compeau & Grewal, in "Comparative Price Advertising: Believe It Or Not", J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that **"decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal" and concluding that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."**); Joan Lindsey-Mullikin & Ross

D. Petty, "Marketing Tactics Discouraging Price Search: Deception and Competition", 64 J. of Bus. Research 67 (January 2011) (concluding that **"[r]eference price ads strongly influence consumer perceptions of value"**); Praveen K. Kopalle & Joan Lindsey-Mullikin, "The Impact of External Reference Price On Consumer Price Expectations", 79 J. of Retailing 225 (2003), (concluding that **"research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value"** and **"have a significant impact on consumer purchasing decisions."**); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, "An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product", 6 J. of App'd Bus. Res. 1 (1990) (concluding that **"consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."**).

37.     Where the former prices listed by the seller are genuine – where the buyer really is getting an item for a lower price than the one at which it is ordinarily or was previously sold – then the "bargain" promised in a seller's advertising may be real.

38.     Unfortunately, the case at bar is not such a case.

39.     The case at bar involves a tactic designed to trick consumers into thinking they are getting a "bargain," based on the use of fake former prices which do not reflect a real price at which the items in question have been sold or offered for sale for a substantial period of time by Defendants, who are the exclusive sellers of the items; a fake former price whose only purpose is to convince consumers that Defendants' current price for the item is so far below the price ordinarily or previously charged by Defendants that the consumer cannot pass up the "bargain."

40.     The law recognizes the abuses which can flow from the use of fictitious former prices.

41.    For example, 16 C.F.R. § 233.1 specifically prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed.  See 16 C.F.R. § 233.1., stating:

**§ 233.1 Former price comparisons.**

**(a)  One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the 'reduced' price is, in reality, probably just the seller's regular price.**

**(b)  A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, 'Formerly sold at $____'), unless substantial sales at that price were actually made.**

*          *          *

**(d)  Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced." (emphasis added)**

42.    16 C.F.R. § 233.1(b) makes clear that any statement describing a purported former price is deceptive – and thus unlawful – unless the purported price comparison is based on a real price at which the item in question was actually sold in the recent past for a substantial period of time.  See 16 C.F.R. § 233.1(b): requiring **"that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business…"**

43.    New Jersey law also recognizes that the tactic of using a false former price to lure consumers into believing they are getting a discount is a misleading and deceptive tactic.

44.    The regulations promulgated under the New Jersey Consumer Fraud Act include an entire set of regulations designed to make sure that when a seller uses purported discounts and statements regarding purported former prices to try to induce a purchase, the statements are clear, true, and accurate, and not in any way misleading or deceptive.

45.    Taken together, these regulations prohibit a New Jersey seller from using a fictitious, baseless, made-up, or "estimated" former price in its advertising and require that a seller's stated former price be a real price at which the goods in question were actually offered for sale in New Jersey in the recent past.

46.    For example, N.J.A.C. § 13:45A-9.6, entitled **"Pricing; prohibition on fictitious pricing and methods of substantiation"** states:

> **(a)  An advertiser shall not use a fictitious former price. Use of a fictitious former price will be deemed to be a violation of the Consumer Fraud Act.**
>
> **(b)  A former price or price range or the amount of reduction shall be deemed fictitious if it cannot be substantiated, based upon proof:**
>
>> **1.  Of a substantial number of sales of the advertised merchandise, or comparable merchandise of like grade or quality made within the advertiser's trade area in the regular course of business at any time within the most recent 60 days** during which the advertised

merchandise was available for sale prior to, or <u>which were in fact made in the first 60 days during which the advertised merchandise was available for sale following the effective date of the advertisement;</u>

**2.  That the advertised merchandise, or comparable merchandise of like grade or quality, <u>was actively and openly offered for sale at that price within the advertiser's trade area in the regular course of business during at least 28 days of the most recent 90 days before or after the effective date of the advertisement</u>; or**

**3.  That the price does not exceed the supplier's cost plus the usual and customary mark-up used by the advertising merchant in the actual sale of the advertised merchandise or comparable merchandise of like grade or quality in the recent regular course of business. (emphasis added).**

47.     Thus, New Jersey law prohibits retailers from advertising any former price with respect to an item, or any purported sale or discount based on that price, unless the item, or a similar item, (a) was actually sold a substantial number of times at that price during the first or most recent 60 days during which the item was offered for sale, or (b) was offered for sale at that price during at least 28 of the most recent 90 days.

48.     Similarly, for items with a price of less than $100, N.J.A.C. §13:45A-9.3(a)(3) provides that a seller must comply with N.J.A.C. §13:45A-9.4(a)(6), which requires a seller to specifically:

**6.  <u>Set forth with specificity when in the remote past a former price of an item of merchandise was effective if it was not actively or openly offered for sale within the advertiser's trade area in the regular course of business during at least 28 of the 90 days before the effective date of the advertisement.</u> In this regard, when advertising a seasonal sale, such as Christmas dishes, pool supplies, outdoor furniture, etc., actual dates, specific holidays or terms such as 'last season,' may be used to describe when the former price was used in the remote past. (emphasis added).**

49.     Thus, these regulations do not permit a seller to invent, fabricate, estimate, or blindly adopt a purported former price.  Rather, under these regulations, a purported former price

advertised by the seller must be a <u>real price</u> at which the seller or someone in the seller's trade area <u>actually sold or offered</u> the item for sale in the recent past.

50.     Defendants' policy of displaying on its price tags false reference prices, which purport to be former prices but in fact are not, and offering and selling items at purportedly-discounted, phantom "sale" prices, is a deceptive and misleading practice in the sale of goods.

51.     The facts alleged herein regarding Defendants' advertising, marketing, and sales practices are based on investigation by Plaintiff and counsel, which involved, <u>inter alia</u>, multiple visits to multiple Old Navy and Old Navy Outlet stores in New Jersey and elsewhere, on multiple dates, to observe the extent and frequency of the sales and discounts offered by Defendants on various items in those stores.

52.     Further, counsel has been monitoring Defendants' retail website for several years via a proprietary data harvesting system. This computer program tracks virtually every item offered for sale on this website each and every day, comprising thousands of products, and records the advertised reference and selling prices for each item on each day, as well as additional discounts or applicable coupons.  The data confirms that Defendants nearly always offer their products on "sale" or at a discount off their advertised reference prices, and rarely if ever offer the products for sale at the advertised reference price.

53.     In the case at bar, virtually all of the products sold at Defendants' physical Old Navy and Old Navy Outlet stores are manufactured by Defendants or their agents for sale exclusively at Defendants' Old Navy stores, and are not offered for sale by other retailers.  Thus, the reference prices advertised at Defendants' Old Navy and Old Navy Outlet stores purport to be Defendants' own former prices.

54.     Defendants violate the law by having a uniform policy of creating and listing an artificially high fake base price on the price tag of every item offered for sale in their physical Old Navy and Old Navy Outlet stores; a price which purports to be each item's original or regular, non-discounted price.

55.     These fake base prices are created by Defendants, using a set of uniform criteria created by Defendants, and are not based on any real prices at which the items in question are or were actually sold or offered for sale by Defendants, who are the exclusive sellers of the items, for any substantial period of time.

56.     Indeed, these fake base prices are much higher than the prices at which the items in question are customarily sold or offered for sale by Defendants in the regular course of business.

57.     Such fake base prices are used by Defendants to create the misleading impression in the minds of consumers that the prices of the items have been "discounted" down from the higher fake base prices when Defendants offer to sell these items at a "sale" price far lower than the fake base price, often at a purported **"50% OFF"** discount.  See Exhibit B, Sample in-store and signs and notices advertising various **"% OFF"** discounts and **"SALE NOW"** prices; Exhibit E, Plaintiff's in-store receipt, asserting, e.g., an **"Item Discount"** of **"20.0%"** off resulting in a claimed monetary savings of **"-4.00"** on that item, and a total monetary savings of $147.32 (**"You Saved 147.32"**).

58.     In actuality, however, the lower, purportedly discounted "sale" prices are not discounted prices at all, but rather are effectively the "regular" prices at which Defendants ordinarily and consistently sell the items in question, based on counsel's investigation.

59.     The fake base price listed by Defendants, and the promised discounts and sale prices, are merely ruses because virtually none of the items offered for sale in Defendants' physical

Old Navy and Old Navy Outlet stores are ever sold or offered for sale for a reasonably substantial period of time at those higher base prices.

60.     Indeed, Defendants' Old Navy Outlet store consistently and continuously offers every single item in the store for sale at a discounted price.  See Exhibit C, Photographs of Old Navy Outlet signs stating **"OUTLET EXCLUSIVE save UP TO 50% OFF STOREWIDE."**

61.     Defendants' deceptive scheme is bolstered by certain related uniform policies.

62.     Using the fake base price as a starting point, Defendants perpetually advertise the items for sale, via uniformly-worded signs and notices, claiming that the items are being sold at a low **"SALE"** price or for a specified percentage-off discount.  This practice is false and misleading because the advertised sale prices and percentage-off discounts on such signs and notices – such as **"SALE NOW $10"** or **"NOW 50% OFF"** – do not represent an actual sale or discount.

63.     Rather, the purported sale prices and percentage-off discounts listed on such signs and notices merely represents a difference between the higher fake base price created by Defendants and listed on the item's price tag and the lower, purportedly-discounted price at or near which Defendants regularly sell the item in the normal course of business.

64.     Under this pricing nomenclature, Defendants intended to (and did in fact) convey to its customers that, although its former price of the item in question was – and the true value of the item is – the item's tagged price, e.g., $29.00, Defendants are **"NOW"** temporarily offering to sell the item at a lower **"SALE"** price that is discounted, e.g., by **"50% OFF"** the former price.

65.     Defendants selected and utilized this language specifically to create the impression in the minds of consumers that the claimed reference price for an item in question was in fact Defendant's former price for such item.  Indeed, Defendants' use of the words **"SALE NOW"** and **"OFF"** constitutes an express representation to consumers that Defendants are **"NOW"** giving

16

the consumer a limited-time opportunity to purchase the item at a **"SALE"** price that is substantially discounted by a claimed percentage **"OFF"** the item's former price (i.e., the tagged reference price), a price at which Defendants previously offered the item for sale.

66.     Confronted with such a pricing display, a reasonable New Jersey consumer would believe that the higher reference price displayed on Defendants' price tags represents a typical price at which the same item was previously sold by Defendant for a substantial period of time, and thus is equivalent to the fair market value of the item.

67.     The average consumer would also understand that the advertised "sale" price and "percentage-off" discount displayed on Defendants' signs represents a discounted or "sale" price for the item, and that the promised discount – or the difference between the higher, tagged reference price and the lower "sale" price displayed on the sign – represents the amount of monetary savings that would be appreciated by the consumer who purchases the item from Defendants.

68.     Defendants also bolster the above-referenced scheme by presenting customers with a written receipt which claims that a **"Discount"** or **"Sav[ings]"** of a specific percentage and/or dollar amount was provided to the consumer.  See Exhibit E, Plaintiff's in-store receipt, asserting, e.g., an **"Item Discount"** of **"20.0%"** off a long-sleeve hooded fleece with a tagged fake base price of **"$19.99,"** resulting in a purported sale price of **"$15.99"** and a claimed **"Discount"** of **"-4.00"**, and additionally informing Plaintiff that **"You Saved 147.32."**  These written statements on Defendants' receipts are false and misleading.  Again, the amount of the purported **"Discount"** and monetary savings listed on such receipts is simply the difference between the higher fake base prices created by Defendants and listed on the item's price tag and the lower prices at or near which the item is regularly and consistently sold by Defendants in the ordinary course of business.  Thus,

the purported **"Discount"** and **"Sav[ings]"** claimed on such receipts are entirely illusory. Customers are not actually receiving the **"Discount"** or monetary **"Sav[ings]"** claimed by Defendants (if any at all). They are simply buying an item at the price at or near which Defendants regularly and consistently sell the item.

69.     The policies described herein are not unique to the items purchased by Plaintiff. Rather, Defendants' deceptive advertising, marketing and sales practices of listing fake "regular" prices and non-existent purported "sales" and "discounts" was systematic and pervasive at all of their physical Old Navy and Old Navy Outlet stores throughout New Jersey and are applied to each product for which a lower purported discount price and a higher purported regular price were listed by Defendants.

70.     Plaintiff's experience in purchasing products from Defendants' physical Old Navy stores helps illustrate Defendants' unlawful practices described herein.

71.     On various dates between 2013 and the present, Plaintiff made several purchases of purportedly-discounted merchandise at Defendants' physical Old Navy and Old Navy Outlet stores in New Jersey and was subjected to the uniform practices described herein.

72.     Specifically, on March 24, 2019, Plaintiff visited Defendants' Old Navy Store # 3745, located at 100 Premium Outlets Drive, Blackwood, NJ 08012.

73.     In the front window of the store, Plaintiff observed a large sign posted by Defendants, similar to the one pictured in Exhibit C, which proclaimed a "**STOREWIDE**" sale of "**UP TO 50% OFF.**"

74.     On that visit, Plaintiff purchased a number of items, including an Old Navy Jersey Swing Dress for Women ("Dress"), Item #390760051.

75.     The price tag attached to the dress listed a fake base price of **"$29.99."** <u>See</u> Exhibit D, Photograph of dress purchased by Plaintiff, with attached price tag stating **"$29.99."**

76.     The dress was displayed in Defendants' physical store beneath a sign which stated **"NOW $20"**. <u>See</u> Exhibit B, Photographs of similar in-store Old Navy signs.

77.     Defendants charged Plaintiff the purportedly-discounted price of $20.00 for the dress, representing that this was a **"Discount[ed]"**, **"SALE"** price for the dress, and that Plaintiff had received an **"Item Discount"** of **"-9.99"** off the purported **"29.99"** base price of the dress. Indeed, the written receipt that Defendants provided to Plaintiff upon her purchase off the dress specifically stated with respect to the dress:  **"Item Discount ... -9.99"**. <u>See</u> Exhibit E, Plaintiff's in-store receipt reflecting, <u>inter</u> <u>alia</u>, purchase of dress.

78.     Believing she was getting an item which previously had regularly been sold for some substantial period of time in the recent past for $29.99 – an item which she therefore justifiably believed had an objective value of $29.99 – Plaintiff purchased the dress for a purportedly discounted price of $20.00.

79.     In actuality, the dress purchased by Plaintiff was not sold by Defendants or anyone else for any substantial period of time for $29.99.

80.     Rather, based on counsel's investigation of Defendants' Old Navy store prices, Old Navy had rarely – if ever – offered the dress for $29.99.

81.     The fake base price of **"$29.99"** was listed on the dress's price tag and on the sales receipt provided to Plaintiff for the sole reason of creating the false impression in the mind of Plaintiff and other consumers that the usual price at which Defendants regularly and ordinarily sold the dress was $29.99, in order to induce Plaintiff to purchase the dress by making her believe

that she was receiving a deal by purchasing the dress at the purportedly-discounted, sale price of $20.00.

82.     In actuality, Defendants created the purported base price of $29.99 for the dress as a sales gimmick, knowing that the true, objective value of the dress was far less than that amount. The $29.99 purported base price was a fake former price created by Defendants according to a standardized formula.  Defendants were fully aware that Defendants would regularly sell this item, and offer it for sale, for far less than $29.99 and that, therefore, any claim that the item's regular price was $29.99 was deceptive and misleading.

83.     On the same visit, Plaintiff purchased an Old Navy Zip-Front Hoodie for Boys, Item #287720301.

84.     The price tag attached to the hoodie listed a fake base price of **"$19.99."**  See Exhibit D, Photograph of hoodie purchased by Plaintiff, with attached price tag stating **"$19.99."**

85.     The hoodie was displayed in Defendants' physical store beneath a sign which stated **"SALE NOW 20% OFF"**.  See Exhibit B, Photographs of similar in-store Old Navy signs.

86.     Defendants charged Plaintiff the purportedly-discounted price of $15.99 for the hoodie, representing that this was a **"Discount[ed]"**, **"SALE"** price for the hoodie, and that Plaintiff had received a **"Discount"** of **"-4.00"** – or **"20%"** off – the purported **"$19.99"** base price of the hoodie.  Indeed, the written receipt that Defendants provided to Plaintiff upon her purchase off the hoodie specifically stated with respect to the hoodie:  **"Item Discount 20% … -4.00"**.  See Exhibit E, Plaintiff's in-store receipt reflecting, inter alia, purchase of hoodie.

87.     Believing she was getting an item which previously had regularly been sold for some substantial period of time in the recent past for $19.99 – an item which she therefore

justifiably believed had an objective value of $19.99 – Plaintiff purchased the hoodie for a purportedly discounted price of $15.99.

88.     In actuality, the hoodie purchased by Plaintiff was not sold by Defendants or anyone else for any substantial period of time for $19.99.

89.     Rather, based on counsel's investigation of Defendants' Old Navy store prices, Old Navy had rarely – if ever – offered the hoodie for $19.99.

90.     The fake base price of **"$19.99"** was listed on the hoodie's price tag and on the sales receipt provided to Plaintiff for the sole reason of creating the false impression in the mind of Plaintiff and other consumers that the usual price at which Defendants regularly and ordinarily sold the hoodie was $19.99, in order to induce Plaintiff to purchase the hoodie by making her believe that she was receiving a deal by purchasing the hoodie at the purportedly-discounted, sale price of $15.99.

91.     In actuality, Defendants created the purported base price of $19.99 for the hoodie as a sales gimmick, knowing that the true, objective value of the hoodie was far less than that amount. The $19.99 purported base price was a fake former price created by Defendants according to a standardized formula. Defendants were fully aware that Defendants would regularly sell this item for far less than $19.99 and that, therefore, any claim that the item's regular price was $19.99 was deceptive and misleading.

92.     Based on counsel's investigation, the items purchased by Plaintiff were never sold or offered for sale at the non-discounted, fake base prices listed on their price tags for a substantial period of time.  Rather, the items were nearly always sold and offered for sale at a price at or near the purported "sale" prices that Plaintiff paid.

93.     As such, the items that Plaintiff purchased were not actually on sale or discounted at all when Plaintiff purchased them, as represented by Defendants, and they certainly were not discounted to the extent claimed by Defendants.

94.     Moreover, the prices that Plaintiff paid for the items were not sale or discounted prices at all, as represented by Defendants, but rather were effectively the everyday, regular prices for those items.

95.     Defendants' misrepresentations about the fake base prices and purported sale prices and discounts with respect to the items were calculated and intended to, and did in fact, induce Plaintiff's purchase thereof.

96.     Indeed, Plaintiff would not have purchased either item but for Defendants' representation that they were being offered at a substantially discounted, sale price.

97.     In reality, however, Plaintiff did not receive the discount claimed by Defendant on either of these items. Rather, the prices she paid for these two items were the prices at or near which Defendants customarily and regularly sell these items.

98.     The fake base prices assigned to the items purchased by Plaintiff and listed on their price tags were invented by Defendants and were not based on any prices at which those items had ever been sold or offered for sale. Rather, those fake former prices were created to do exactly what they did: induce a customer to purchase an item by making her believe she was getting an item worth much more than she was currently being asked to pay for it. In actuality, the items purchased by Plaintiff were neither on sale nor discounted to the extent claimed by Defendants; they had never been sold or offered for sale at their assigned fake base prices for a substantial period of time, and the true value of the items was, at most, the same price at which Defendants consistently sold them, which price Plaintiff paid.

99.     Moreover, the quality and value of these items were lower than claimed by Defendants, as they had never been sold for the claimed higher base prices listed on Defendants' price tags for a substantial period of time, and therefore the true worth of the items must be valued at or below the lower prices at which Defendants routinely sold them.

100.     Plaintiff and the class members relied on Defendants' fake base prices and purported sales and discounts; a reliance which was not only reasonable, but entirely intended by Defendants.

101.     Indeed, empirical marketing studies have noted an incentive for retailers to engage in this false and fraudulent behavior. See Comparative Price Advertising: Informative or Deceptive?, Dhruv Grewal and Larry D. Compeau, Journal of Public Policy & Marketing, Vol. 11, No. 1, at 55-56 (Spring 1992):

> **By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.**

102.     The unlawful uniform policies alleged herein go well beyond the items that Plaintiff purchased, and are applied as a matter of uniform policy by Defendants to every item of clothing in every one of Defendants' physical Old Navy and Old Navy Outlet stores which are offered for sale at a purportedly-discounted price.

103.     These deceptive advertising, marketing, and sales practices were kept secret, and were affirmatively and fraudulently concealed from customers by Defendants throughout the class period.

104.     As a result, Plaintiff and her fellow customers of Defendants' Old Navy and Old Navy Outlet stores were unaware of Defendants' unlawful conduct and did not know they were

actually paying the everyday, regular prices for Defendants' products, rather than the advertised, purported discount prices.

105.    Defendants did not tell or otherwise inform Plaintiff or the class members that they were engaged in the deceptive advertising, marketing, and sales practices alleged herein.  By their very nature, Defendants' unlawful practices were self-concealing.

106.    In sum, Defendants induced Plaintiff and the class members to purchase items from Defendants' physical Old Navy and Old Navy Outlet stores in New Jersey, for Defendants' profit, with the promise of discounts that never existed, using claims of inflated and deceptive purported former prices and false sales and discounts.  As a result of this unlawful, deceptive conduct, Plaintiff and the class members have suffered harm as set forth herein.

## CLASS ACTION ALLEGATIONS

107.    **Class Definition:**  Plaintiff brings this action as a class action pursuant to New Jersey Court Rule 4:32(b)(2), seeking solely injunctive relief under New Jersey law on behalf of herself and all members of the following proposed class:

> **All New Jersey citizens who purchased any purportedly discounted item from a physical Old Navy or Old Navy Outlet store in New Jersey between January 8, 2014 and the present.**

108.    The scope of the class definition may be refined after discovery of Defendants' and/or third party records.

109.    The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

110.    The exact number and identities of the persons who fit within the proposed class are contained in Defendants' records and can be easily ascertained from those records.

111.    The proposed class is composed of at least 10,000 persons.

112.    Common questions of law and fact exist as to each class member.

24

113.    All claims in this action arise exclusively from uniform policies and procedures of Defendants as outlined herein.

114.    No violations alleged in this Complaint are a result of any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

115.    There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

   a.  whether the uniform advertising, marketing, and sales practices alleged herein exist;

   b.  whether Defendants regularly sold items or offered items for sale at their listed base prices;

   c.  the standardized formula and criteria by which Defendants create the fake former prices;

   d.  whether Defendants' purported percentage-off discounts reflected actual savings or reductions;

   e.  whether Defendants deceptively advertised every day, regular prices of their items as "discount" or "sale" prices;

   f.  the length of time Defendants engaged in the practices alleged herein;

   g.  whether the alleged practices violate established law; and

   h.  whether the class is entitled to injunctive relief to end the challenged practices.

116.    Plaintiff is a member of the class she seeks to represent.

117.    The claims of Plaintiff are not only typical of all class members, they are identical.

118.    All claims of Plaintiff and the class arise from the same course of conduct, policies and procedures as outlined herein.

119.    All claims of Plaintiff and the class are based on the exact same legal theories.

120.    Plaintiff seeks the same relief for herself as for every other class member.

121.    Plaintiff has no interest antagonistic to or in conflict with the class.

122.    Plaintiff will thoroughly and adequately protect the interests of the class, having

retained qualified and competent legal counsel to represent herself and the class.

123.    Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

124.    Without the proposed class action, Defendants will continue the complained-of practices, which will result in further harm to Plaintiff and class members.

## COUNT I

### INJUNCTIVE RELIEF UNDER THE NEW JERSEY UNIFORM
### DECLARATORY JUDGMENT ACT
### N.J.S.A. §  2A:16-51, et seq.

125.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if set forth fully herein.

126.    As alleged herein, Defendants engaged in the following uniform practices in their Old Navy and Old Navy Outlet retail stores in New Jersey:

    a.  Set and advertised an arbitrary fake base price for every item, which price was set forth on each item's price tag and was represented to be the item's "original" or "regular" price, despite the fact that such item was never sold or offered for sale at that price for a substantial period of time;

    b.  Continuously advertised and offered items for sale at a purported "sale" price or percentage-off discount via large signs displayed throughout their stores, when the discounts and sale prices did not actually represent the advertised savings since the items had never been offered for sale at their purported base prices for a substantial period of time;

    c.  Represented that items were on sale and offered at discounted prices when in fact the items were being offered for sale at their everyday, regular prices;

    d.  Charged their customers essentially the full, regular price for the items rather than giving them the advertised discount; and

    e.  Represented to their customers on their receipts that they had received a certain percentage discount and "saved" a specified amount of money when in fact they did not.

127.    Plaintiff and the class need, and are entitled to, an order for injunctive and declaratory relief declaring that Defendants' uniform advertising, marketing, and sales policies

alleged herein violate federal and New Jersey pricing regulations, and enjoining Defendants from continuing such practices in their Old Navy and Old Navy Outlet stores in New Jersey.

128.    Specifically, Plaintiff and the class need, and are entitled to, an order for injunctive and declaratory relief:

      a.  declaring that Defendants' uniform policy of placing fictitious reference prices on the tags of merchandise, which are not based on actual prices charged in New Jersey in the recent past, to be a violation of New Jersey law;

      b.  declaring Defendants' uniform policy of systematically selling such merchandise at a lower price that purports to be a "sale" price, affording the customer an illusory monetary or percentage-off savings, to be a violation of New Jersey law; and

      c.  enjoining Defendants from continuing both of these policies.

129.    Plaintiff and the class members have a significant interest in this matter in that each has been, and will again in the future, be subjected to the unlawful policies alleged herein.

130.    Defendants are continuing to engage in the unlawful policies alleged herein.

131.    Plaintiff is a frequent and repeat customer of Old Navy and Old Navy Outlet and will shop there again, but brings this suit to ensure that the reference and sale prices listed on Defendants' price tags and in-store signs are genuine and not fictitious.

132.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

## <u>COUNT II</u>

**INJUNCTIVE RELIEF UNDER THE NEW JERSEY CONSUMER FRAUD ACT
N.J.S.A. § 56:8-1, <u>et seq</u>.**

133.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

134.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, <u>et seq</u>. (the "CFA"), was enacted to protect consumers against sharp and unconscionable commercial practices by persons

engaged in the sale of goods or services.  See Marascio v. Campanella, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

135.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.  See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) (**"The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public."**).

136.    Indeed, **"[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

137.    For this reason, the **"history of the [CFA] is one of constant expansion of consumer protection."** Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

138.    The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

139.    Specifically, N.J.S.A. 56:8-2 prohibits **"unlawful practices"** which are defined as:

> **The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby.**

140.    The catch-all term **"unconscionable commercial practice"** was added to the CFA by amendment in 1971 to ensure that the CFA covered, inter alia, **"incomplete disclosures."** Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (N.J. Ct. App. 1982).

141.    In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic.  See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

142.    In order to state a cause of action under the CFA, a plaintiff does not need to show reliance by the consumer.  See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (N.J. App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding that reliance is not required in suits under the NJCFA because liability results from **"misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby"**).

143.    As stated by the New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C., 4 A.3d 561, 580 (N.J. 2010): **"It bears repeating that the [NJCFA] does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**

144.    It is also not required that an affirmative statement be literally false in order to be considered deceptive and misleading under the CFA. Even a statement which is literally true can be misleading and deceptive in violation of the CFA. See Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written statement was literally true, holding **"the fact that the labels were literally true does not mean they cannot be misleading to the average consumer."**)

145.    A CFA violation also does not require that the merchant be aware of the falsity of the statement or that the merchant act with an intent to deceive.  See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997):

> **One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive…An intent to deceive is not a prerequisite to the imposition of liability.**

146.    Nor is it a defense to a CFA claim that the merchant acted in good faith. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994) (**"the Act [CFA] is designed to protect the public even when a merchant acts in good faith."**)

147.    In the case at bar, Defendants' policy of placing a fake base price on the tags of items offered for sale in their Old Navy and Old Navy Outlet stores in New Jersey, and then consistently offering those items for sale at a lower, purportedly-discounted "sale" price, is a deceptive, misleading, and/or unconscionable commercial practice in the sale of goods in violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

148.    This policy involves, inter alia, both misleading affirmative statements, the knowing omission of material facts, and violations of regulatory standards.

149.    First, the practice of placing on price tags a fictitious reference price – a price that does not reflect an actual price at which Defendants actually sold a substantial number of the same or similar items in the recent past, or offered such items for sale for a significant period of time – is an affirmative misleading and deceptive statement in the sale of goods in violation of N.J.S.A. § 56:8-2.  Defendants' practice of advertising specified "sale" prices and "% OFF" discounts that do not actually result in the claimed savings by the consumer is also an affirmative misleading and deceptive statement in violation of N.J.S.A. § 56:8-2.

150.    Second, Defendants know that any reasonable New Jersey consumer who sees the fake reference price on Defendants' tags will believe that the reference price is an actual price at which Defendants actually offered the item for sale in the recent past, and that Defendants' sale price results in actual savings for the consumer. Despite this, Defendants do not place any statement or warning on or near the tag itself, or on or near the item itself, explaining that their fake base price is simply a marketing tool created by Defendants that does not represent an actual

price at which the item was sold or offered for sale for any substantial length of time in the recent past. Nor do Defendants inform customers that their claimed "sale" prices and promised "% OFF" discounts do not actually result in the claimed monetary savings by the consumer. Thus, Defendants' policy also involves knowing omissions of material fact in the sale of goods in violation of N.J.S.A. § 56:8-2.

151. Finally, Defendants' policy as described herein is an unconscionable commercial practice because it violates regulatory authority such as 16 C.F.R. § 233.1-2 and N.J.A.C. § 13:45A-9.6, as set forth herein.

152. Plaintiff and the class members reasonably and justifiably expected Defendants to comply with applicable law, but Defendants failed to do so.

153. As a direct and proximate result of these unlawful actions by Defendants, Plaintiff and the class have been injured and have suffered an ascertainable loss of money.

154. As with other terms of the CFA, the term "ascertainable loss" is to be construed liberally in favor of the consumer in order to carry out the CFA's broad remedial purposes. See In Union Ink Co.. Inc. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div. 2002) (holding that the ascertainable loss **"requirement has been broadly defined as embracing more than a monetary loss"**).

155. Thus, the CFA does not require a plaintiff to have suffered any out-of-pocket loss. See Union Ink, 352 N.J. Super. at 646:

> **[A] victim of consumer fraud must prove an 'ascertainable loss,' N.J.S.A. 56:8-19, but that requirement has been broadly defined as embracing more than a monetary loss.** (emphasis added).

156. Indeed, a consumer has experienced an "ascertainable loss" within the meaning of the CFA whenever the consumer fails to receive the bargain which was promised by the seller. See International Union v. Merck & Co., 384 N.J. Super. 275, 291 (App. Div. 2006):

> **Ascertainable loss "has been broadly defined as more than a monetary loss" and encompasses situations where "a consumer receives less than what was promised."** (emphasis added).

157.    Speaking specifically as to the benefit of the bargain expected by a consumer who purchases merchandise at a discount, the New Jersey Supreme Court in <u>Furst v. Einstein Moomjy</u>, 182 N.J. 1, 13-14 (2004) held that **"The 'expectation interest' of the consumer who purchases merchandise at a discount is the benefit of the bargain."**

158.    Plaintiff suffered an ascertainable loss within the meaning of the CFA when she failed to receive the full benefit of the bargain promised by Defendants.

159.    The purported discounts and "sale" prices offered by Defendants were illusory because the existence of the promised discounts and sales was premised on Defendants' misleading and false reference prices, and their representation that the actual value of the items was equal to those prices.

160.    Under New Jersey law, the value of an item is presumed to be the price listed on its price tag as the regular, typical price at which it was sold or offered for sale in the recent past.

161.    By stating that the reference prices of the items purchased by Plaintiff were higher than the prices at which the items were typically sold or offered for sale, Defendants promised a bargain to Plaintiff in which she would receive items worth the reference prices claimed on Defendants' tags and would appreciate monetary savings equal to the promised percentage-off discounts and/or the difference between the reference prices and the purchase prices. In actuality, however, the true value of the items purchased by Plaintiff was less than the false and inflated reference prices listed on their tags, and Plaintiff did not save the amount of money claimed by Defendants.

162.    Specifically, Defendants affixed a price tag to the Old Navy Jersey Swing Dress for Women purchased by Plaintiff, representing that the former price (and value) of the dress was

**"$29.99,"** and posted a sign advertising that the dress was **"NOW"** on sale for just **"$20,"** thus representing that Plaintiff was getting a dress worth **"$29.99"** for just **"$20."**  In reality, those statements of value and savings were grossly inflated by Defendants.  Plaintiff did not receive the benefit of Defendants' promise that she would be receiving a dress worth $29.99 and monetary savings of $9.99.  The dress was not typically offered for sale in New Jersey, or sold in substantial amounts or for a substantial period of time, by anyone for a price as high as $29.99, and the dress was worth less than $29.99; thus, Plaintiff did not actually realize a monetary savings of $9.99 when she purchased the dress for $20.00.  See Exhibits B, D, and E.

163.    Similarly, Defendants affixed a price tag to the Old Navy Zip-Front Hoodie for Boys purchased by Plaintiff, representing that the former price (and value) of the hoodie was **"$19.99,"** and posted a sign advertising that the hoodie was **"NOW"** on sale at a **"20% OFF"** discount, thus representing that Plaintiff was getting a hoodie worth **"$19.99"** for just $15.99, at a **"20% OFF"** discount.  In reality, those statements of value and savings were grossly inflated by Defendants.   Plaintiff did not receive the benefit of Defendants' promise that she would be receiving a hoodie worth $19.99 and monetary savings of $4.00.  The hoodie was not typically offered for sale in New Jersey, or sold in substantial amounts or for a substantial period of time, by anyone for a price as high as $19.99, and the hoodie was worth less than $19.99; thus, Plaintiff did not actually realize a monetary savings of $4.00 when she purchased the hoodie for $15.99. See Exhibits B, D, and E.

164.    Moreover, Plaintiff suffered an out of pocket loss of money in that she was induced to pay Defendants money based on the misleading and deceptive statements of Defendants. But for those misleading and deceptive statements, Plaintiff would not have paid any money to Defendants.

165.    Pursuant to N.J.S.A. § 56:8-19, Plaintiff seeks injunctive relief for herself and the class, in the form of an order requiring Defendants to stop the complained-of practices in their Old Navy and Old Navy Outlet stores in New Jersey.  Plaintiff's complaint does not seek damages for herself or the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered in favor of Plaintiff and the class against Defendants as follows:

A.    Enter an order certifying the proposed class, designating Plaintiff as the representative for the class, and designating the undersigned as class counsel;

B.    Declare that Defendants' conduct alleged herein be adjudged and decreed in violation of the federal and state pricing regulations and state laws cited above;

C.    Grant the requested injunctive relief, prohibiting the complained-of conduct by Defendants in the future;

D.    Grant reasonable attorneys' fees and reimbursement of all costs incurred in the prosecution of this action pursuant to N.J.S.A. 56:8-19 of the NJCFA; and

E.    Grant such other equitable relief as this Court deems just and proper.


Dated:  January 8, 2020              BY: _____
                                          DeNITTIS OSEFCHEN PRINCE, P.C.
                                          Stephen P. DeNittis, Esq.
                                          Joseph A. Osefchen, Esq.
                                          Shane T. Prince, Esq.
                                          5 Greentree Centre
                                          525 Route 73 North, Suite 410
                                          Marlton, NJ 08053
                                          Tel.:  (856) 797-9951
                                          Fax:  (856) 797-9978

                                          and

HATTIS & LUKACS
Daniel M. Hattis*
Paul Karl Lukacs*
400 108th Ave NE, Suite 500
Bellevue, WA 98004
Tel.:  (425) 233-8650
Fax:  (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiff

* Pro Hac Vice application to be submitted

## DEMAND FOR TRIAL BY JURY AND CERTIFICATION

Plaintiff hereby demands trial by jury of six on all issues.

I hereby certify, pursuant to R. 4:5-1, that to the best of my knowledge, information and belief at this time the matter in controversy is not the subject of any other action pending in any Court, nor of any pending Arbitration proceeding, that no other action or Arbitration is contemplated, and further that there are no other parties who should be joined in this action.

Pursuant to R. 4:25-4, Stephen P. DeNittis, Esquire is designated as trial counsel.

Dated:  January 8, 2020                    BY:

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Tel.:  (856) 797-9951
Fax:  (856) 797-9978

and

HATTIS & LUKACS
Daniel M. Hattis*
Paul Karl Lukacs*
400 108th Ave NE, Suite 500
Bellevue, WA 98004
Tel.:  (425) 233-8650
Fax:  (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Attorneys for Plaintiff

* Pro Hac Vice application to be submitted

# Exhibit A





# Exhibit B













# Exhibit C



# Exhibit D







# Exhibit E

Old Navy 3745
100 Premium Outlets Dr
Blackwood, NJ 08012
(856) 302-4596

03/24/2019                    4:25:26 PM
Trans.: 7600            Store: 03745
Res.: 006
Cashier: 2758425         Valid No:5116

SALE

```
03745006760020190324 5116
```

STRAIGHT FF SH                  10.00 N
 392127101  0012     1 @ 19.99
  Item Discount          -9.99
 ONOB*$10TWILL SHOR
  Trans. Discount         0.00
 521 - $30 Super Cash

M LS RLX OPEN                   18.89 N
 390960011  0002     1 @ 26.99
  Item Discount 30%      -8.10
 ONOW*30XLONG-SLEEV
  Trans. Discount         0.00
 521 - $30 Super Cash

SS KNIT SWING                   20.00 N
 390760051  0001     1 @ 29.99
  Item Discount          -9.99
 W*$20SHORT-SLEE
  Trans. Discount         0.00
 521 - $30 Super Cash

F LS RLX POPPY                  16.19 N
 390960040  0002     1 @ 26.99
  Item Discount 40%     -10.80
 ONOW*40XLONG-SLEEV
  Trans. Discount         0.00
 521 - $30 Super Cash

LS HOOD OPP                     15.99 N
 287720301  1107     1 @ 19.99
  Item Discount 20%      -4.00
 ONOB*20XFLEECE JOG
  Trans. Discount         0.00
 521 - $30 Super Cash

SHORTIE OF                      10.00 N
 284679011  0003     1 @ 24.99
  Item Discount         -14.99
 W*$10SHORT-OPEN
  Trans. Discount         0.00
 521 - $30 Super Cash

SL FASHION SHEATH               27.99 N
 394105001  0002     1 @ 39.99
  Item Discount 30%     -12.00
 W*30XPONTE-KNIT
  Trans. Discount         0.00
 521 - $30 Super Cash

9IN STR RUN SH SOL              12.49 N
 201467011  0002     1 @ 24.99
  Item Discount 50%     -12.50
 ONOW*50XPERFORMANC
  Trans. Discount         0.00
 521 - $30 Super Cash

9IN STRWOVEN SHORT              14.99 N
 391743031  0002     1 @ 29.99
  Item Discount 50%     -15.00



```
                                    10.00 N
  PA OPP BREATHE
  392329011  1107      1 @ 12.99
     Item Discount            -2.99
  ONOB*$10PERFORMANC
     Trans. Discount           0.00
  521 - $30 Super Cash

  PA OPP BREATHE               10.00 N
  392329001  1107      1 @ 12.99
     Item Discount            -2.99
  ONOB*$10PERFORMANC
     Trans. Discount           0.00
  521 - $30 Super Cash

  STRAIGHT FF SH               10.00 N
  392127031  0012      1 @ 19.99
     Item Discount            -9.99
  ONOB*$10TWILL SHOR
     Trans. Discount           0.00
  521 - $30 Super Cash

  STRAIGHT FF SH               10.00 N
  392127031  0014      1 @ 19.99
     Item Discount            -9.99
  ONOB*$10TWILL SHOR
     Trans. Discount           0.00
  521 - $30 Super Cash

  FASHION JEGGINGS             20.99 N
  391903001  0802      1 @ 34.99
     Item Discount 40%       -14.00
  WW40XFASHION JE
     Trans. Discount           0.00
  521 - $30 Super Cash

  STRAIGHT FF SH               10.00 N
  392127101  0014      1 @ 19.99
     Item Discount            -9.99
  ONOB*$10TWILL SHOR
     Trans. Discount           0.00
  521 - $30 Super Cash

  You Saved     147.32

  Subtotal            217.53
  Total               217.53
  Visa                217.53
     ENTRY METHOD:  Chip
     Account:  XXXXXXXXXXXXX4768
     Auth: Approved (30320D)
     Application Label:  VISA CREDIT
     AID:  A0000000031010
     TVR:  8000008000
     TSI:  6800

       CARDHOLDER WILL PAY TO THE ISSUER
    OF THE CHARGE CARD PRESENTED HEREWITH
        THE AMOUNT STATED HEREON IN
     ACCORDANCE WITH THE ISSUER'S AGREEMENT
          WITH THE CARDHOLDER.

  Total Tender        217.53
  Change Due            0.00
```

Unwashed, unworn merchandise may be returned within 45 days of purchase in the country of purchase for a refund in the original form of payment for the price paid or you may apply price paid towards a merchandise exchange. Other terms and conditions apply. Please see complete details in any Old Navy store or online at oldnavy.com. ON deals, news, and fun! Like us: www.facebook.com/oldnavy Follow us: www.twitter.com/oldnavy Email alerts: www.oldnavy.com